**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

**JASON GOFF**, individually and on behalf of all others similarly situated, and **AIMEE CROSS**, individually and on behalf of all others similarly situated,

*Plaintiffs*,

v. CIVIL ACTION NO.: 2:26-cv-00560

**THE CHEMOURS COMPANY FC, LLC,** and **THE CHEMOURS COMPANY**,

*Defendants*.

**CLASS ACTION COMPLAINT**

**NOW COME** Plaintiffs Jason Goff and Aimee Cross, individually and on behalf of all others similarly situated, by counsel, and for their Class Action Complaint against Defendants, The Chemours Company FC, LLC and The Chemours Company, state and allege as follows:

## INTRODUCTION

1. This is a putative class action ( "Action") brought by residents and property owners living in the immediate vicinity of the Chemours Local Landfill at Washington Works in Washington, Wood County, West Virginia (the "Landfill"). Plaintiffs seek relief for among other things, property damage, loss of use and enjoyment, nuisance, trespass, diminution in property value, investigation and testing costs, remediation and abatement costs, exposure-related damages, and other compensatory, equitable, and punitive relief arising from Defendants' acts and omissions in owning, operating, maintaining, monitoring, and controlling the Landfill and its leachate, stormwater, and groundwater management systems as described herein.

2. The Landfill is a closed industrial landfill associated with Defendants' Washington Works operations and is governed by WV Solid Waste/NPDES Permit No. WV0076538.

3. Publicly available materials identify activities at the Landfill at or near DuPont State Road/State Route 892, east of Lake Washington Road and across from Chemours Washington Works, in Washington, Wood County, West Virginia.

4. The Plaintiffs' claims arise from, among other things, recent environmental discharge events fully described herein that have and continue to contribute to a larger continuing tort. These subject events are manifestations of continuing failures in containment, inspection, and/or maintenance at the Landfill and the surrounding site.

5. Upon information and belief, the contamination released from the recent environmental events, as well as continuing and ongoing releases of dangerous and hazardous landfill leachate, include but is not limited to per- and polyfluoroalkyl substances ("PFAS"), including Perfluorooctanoic acid ("PFOA").

6. PFOA is part of the broader PFAS family of persistent "forever chemicals." As further alleged herein, PFAS and PFOA contamination remains and actively accumulates in the soil, groundwater, surface water, sediment, dust, and/or air surrounding the Landfill and surrounding site and has and continues to expose Plaintiffs and the proposed class, including their properties, to chemicals and contamination.

7. By way of additional background, in a recent civil enforcement action filed by the United States and the State of West Virginia, by and through the West Virginia Department of Environmental Protection ("WVDEP"), against these same Defendants in the United States District Court for the Southern District of West Virginia, the government alleged years of historic and ongoing PFAS pollution from Chemours facilities, including Washington Works, and sought

injunctive relief and civil penalties for alleged violations of the Clean Water Act, West Virginia Water Pollution Control Act, Toxic Substances Control Act, and the Resource Conservation and Recovery Act.

8. In this Action, Plaintiffs do not seek to pursue, enforce, duplicate, supersede, or interfere with any remedies, penalties, regulatory relief, governmental enforcement authority, or consent-decree obligations sought or obtained by the United States, the State of West Virginia, or any other governmental entity in any separate enforcement or consent action. Instead, this Action is brought by private residents and property owners to recover private, compensatory, class-wide, and equitable relief for property contamination, diminution in value, loss of use and enjoyment, exposure-related harms, medical monitoring, testing, remediation, abatement, and other individualized and class-wide injuries that are separate and distinct from the governmental enforcement claims.

## PARTIES

9. Plaintiff Jason Goff ("Plaintiff Goff") is a resident and property owner at 39 South Oak Street, Washington, West Virginia 26181. Plaintiff Goff brings this action individually and as a proposed class representative on behalf of residents and property owners living on or near South Oak Street and the surrounding residential area, including adjoining and nearby streets, roads, lanes, and residential areas located at, near, and/or down-gradient of the Landfill and within the Landfill's soil, groundwater, surface water, sediment, dust, and/or air migration pathways.

10. Plaintiff Aimee Cross ("Plaintiff Cross") is a resident and property owner at 346 Club Drive, Washington, West Virginia 26181. Plaintiff Cross brings this action individually and as a proposed class representative on behalf of residents and property owners in the Club Drive/Lake Washington subdivision area and surrounding residential areas whose properties are

downstream, down-gradient, adjacent to, nearby, or otherwise within the Landfill's soil, groundwater, surface water, sediment, dust, and/or air migration pathways.

11. The specific injuries alleged hereby by both the named Plaintiffs and the proposed class include ongoing property contamination, interference with use and enjoyment of the property, and diminution in marketability or value attributable to the alleged Landfill releases. In particular, residents and property owners in the Lake Washington subdivision purchased their properties in substantial part because of the community's access to and enjoyment of Lake Washington. Contamination of the lake as alleged herein materially impairs that benefit by limiting or diminishing boating, swimming, fishing, and other recreational and customary uses of the lake, and it correspondingly reduces the attractiveness, marketability, and value of properties in a community burdened by a contaminated lake.

12. Defendant The Chemours Company FC, LLC ("Chemours Company FC") is a Delaware limited liability company with its principal place of business in Wilmington, Delaware. Chemours FC owns, operates, controls, manages, or is otherwise responsible for the Landfill, including the landfill's post-closure care, leachate collection and treatment systems, stormwater controls, groundwater monitoring, National Pollutant Discharge Elimination System ("NPDES") compliance, regulatory reporting, permit modifications, and environmental obligations.

13. Publicly available WVDEP materials identify Chemours FC, LLC as the applicant, permittee, or responsible party associated with WV Solid Waste/NPDES Permit No. WV0076538 and the Landfill-related releases alleged herein.

14. Defendant The Chemours Company ("Chemours Company") is a Delaware corporation with its principal place of business in Wilmington, Delaware. Upon information and belief, Chemours Company was created as part of a 2015 corporate restructuring effort and is the

parent company of Chemours FC and has publicly held itself out as responsible for PFAS-related liabilities, remediation strategy, corporate compliance, and obligations associated with Washington Works and related PFAS operations.

15. Upon further information and belief, Chemours Company directly participates in, directs, and/or controls the environmental, operational, financial, and/or regulatory decisions concerning the Landfill.

16. To the extent Chemours FC acted through agents, contractors, subsidiaries, affiliates, officers, directors, employees, or other consultants and personnel, such acts and omissions were undertaken within the scope of authority conferred by, directed by, approved by, or otherwise for the benefit of both Defendants.[1] However, Plaintiffs expressly plead herein that each Defendant is directly liable for its own conduct and omissions and/or liable for the conduct and omissions of the other under agency, successor-liability, assumption-of-liabilities, alter-ego, joint-enterprise, joint venture, or other applicable legal principles to be developed through discovery.

## CLASS ACTION ALLEGATIONS

17. Plaintiffs bring this action under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and all others similarly situated who reside on property, own property, use groundwater, use local surface waters, or otherwise have been exposed to, affected by, or damaged by the release, migration, and/or inadequate containment of dangerous and hazardous landfill leachate, including but not limited to PFAS, from the Landfill and surrounding site.

[1] Chemours Company and Chemours FC are referred to collectively herein as either "Chemours" or "Defendants" where the allegations concern conduct, knowledge, control, omissions, representations, obligations, and/or decisions attributable to either or both entities.

18. Plaintiffs anticipate proposing, among others, a South Oak Street-area subclass and a Lake Washington Road/Lake Washington subdivision subclass as alleged herein. Subject to future discovery, additional subclasses may be revealed.

19. The South Oak Street subclass or geographic area may include, without limitation, residents and properties on South Oak Street and nearby or adjoining residential roads and areas in Washington, West Virginia, including properties near DuPont Road/WV 892, the Washington Works Natural Trails access area, Coal Hollow, unnamed tributaries of the Ohio River, and other soil, groundwater, surface water, sediment, dust, and/or air migration pathways connected to the Landfill and surrounding site.

20. The Lake Washington subdivision and Lake Washington Road subclass or geographic area may include, without limitation, residents and properties on Lake Washington Road including any nearby or adjoining residential roads and areas within the Lake Washington subdivision itself whose properties are downstream, down-gradient, or otherwise at and/or near the Landfill and within the Landfill and surrounding site's soil, groundwater, surface water, sediment, dust, and/or air migration pathways.

21. The proposed class also includes all similarly situated persons who own property, reside on property, use groundwater, use local surface waters, or otherwise have been exposed to, affected by, or damaged by the release of dangerous and hazardous landfill leachate, including but not limited to, per- and polyfluoroalkyl substances ("PFAS") as further described herein, from the Landfill and surrounding site.

22. The individuals in the proposed class and subclass are so numerous that joinder of all members is impracticable. The affected residential areas include numerous homes, businesses,

properties, family members, tenants, property owners, and residents located near the Landfill and connected migration pathways.

23. Common questions of fact and law predominate because Plaintiffs' and class members' claims arise from the same Landfill source, alleged operational failures, contaminant pathways, and categories of property and exposure-related harm.

24. Plaintiffs will fairly and adequately protect the interests of the proposed class and subclasses. Plaintiffs have no interests antagonistic to the proposed class, seek relief arising from the same Landfill-related conduct and contamination, and intend to vigorously prosecute this action through qualified undersigned counsel experienced in complex litigation, environmental claims, toxic-tort matters, and class actions.

## JURISDICTION AND VENUE

25. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(d), the Class Action Fairness Act, because this is a putative class action in which the proposed class contains more than 100 members, at least one proposed class member is a citizen of a state different from at least one Defendant, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

26. This Court further has subject-matter jurisdiction under 28 U.S.C. § 1332(a) to the extent complete diversity exists between Plaintiffs and Defendants and the amount in controversy for one or more named Plaintiffs exceeds $75,000, exclusive of interest and costs.

27. This Court has personal jurisdiction over Defendants because Defendants own, operate, manage, control, direct, and/or benefit from business and environmental activities in the Southern District of West Virginia, including through the ownership, operation, control, and management of the Landfill and surrounding site in Wood County, West Virginia.

28. Venue is proper in this District under 28 U.S.C. § 1391 because (a) a substantial part of the events giving rise to this action occurred at or near the Landfill complex in Washington, Wood County, West Virginia located in this District; (b) the events, omissions, releases, exposures, and damages giving rise to Plaintiffs' claims occurred in this District; (c) Defendants conduct business in this District; and (d) the affected properties and/or migration pathways as described herein are located in this District.

## STATEMENT OF FACTUAL ALLEGATIONS

### A. Operations at the Landfill Site & Plaintiffs' Proximity to the Contamination Source

29. The Landfill and surrounding site lie on or near the southern perimeter of the Washington Works manufacturing complex. A portion of the Landfill and surrounding site immediately abuts, borders, and/or is adjacent to Plaintiffs' and proposed class members' properties, including properties in the South Oak Street, Club Drive, Lake Washington Road, and surrounding Washington residential areas.

30. Upon information and belief, Defendants and/or their predecessors referred to or promoted portions of the Landfill and surrounding site in public materials as natural trails, a nature area, and/or a nature preserve, including through references to the Washington Works Natural Trails access drive or similar terminology. This terminology concealed, minimized, and failed to disclose to nearby residents, including the Plaintiffs, the true extent of the Landfill, its historic industrial-waste disposal activities, its leachate and stormwater management systems, and the continuing risk of PFAS and other hazardous-substance migration.

31. Upon information and belief, wastes disposed, stored, contained, treated, or otherwise managed at the Landfill and surrounding site include but are not limited to: (a) inert acrylic polymer sludge, (b) inert mixed plastics, (c) ash derived from the burning of coal and plant

trash, (d) calcium chloride sludge, (e) fluoropolymers, (f) PFAS-bearing manufacturing residues and wastes, including PFOA, and (g) other chemical byproducts associated with Defendants' Washington Works operations.

32. Upon information and belief, PFAS have been present in various Washington Works operations for decades, and PFOA has been associated with fluoropolymer manufacturing at Washington Works.

33. Government permits, including the aforementioned NPDES permit, require Defendants to ensure proper operation and maintenance of treatment and control systems at the Landfill and surrounding site. Defendants' duties therein include, at a minimum, reasonable inspection, maintenance, repair, containment, monitoring, leak detection, stormwater management, corporate oversight, public disclosure, warning, and prompt remediation sufficient to prevent landfill leachate and PFAS-contaminated liquids from escaping into soil, groundwater, surface water, and neighboring residential properties.

B. <u>The February 2024 Leachate Release and Direct Ground Contamination</u>

34. Upon information and belief, from approximately February 16, 2024 to February 19, 2024, untreated landfill leachate, including but not limited to PFOA, leaked from the Landfill and its treatment system. Defendants did not disclose this event to Plaintiffs or warn them in any way. At that time, Plaintiffs did not know, and had no reason or reasonable ability to discover, that the breach and resulting release had occurred because the relevant facts and information were within Defendants' exclusive knowledge and control.

35. Upon information and belief, and based upon publicly available WVDEP reports, the filtration container associated with the Landfill, and its treatment system did not provide effective secondary containment. As a result, hazardous and dangerous leachate bypassed

containment and entered the gravel, soil, and subsurface environment beneath and around the treatment equipment thereby migrating into Plaintiffs' neighboring properties.

36. The aforementioned failure and subsequent leachate release, including but not limited to PFOA, was caused by, among other acts and omissions, Defendants' failures to (a) use appropriate containment materials, (b) inspect and maintain equipment, (c) identify and correct compromised secondary containment, (d) maintain functional leak detection, (e) ensure adequate oversight, and (f) otherwise prevent untreated leachate from reaching gravel, soil, air, and subsurface environment beneath and around the treatment equipment and thereby migrating into Plaintiffs' neighboring properties.

37. Defendants knew or should have known that the Landfill required effective leachate controls and ongoing management to protect nearby residents and properties, including Plaintiffs and the proposed class.

38. As a direct and proximate result of Defendants' acts and omissions stemming from the February 2024 leachate release, Plaintiffs and the proposed class have suffered and continue to suffer and incur injuries and damages as alleged in this Complaint.

### C. The February 2025 Bypass and Uncontrolled Surface-Water Discharge

39. Upon information and belief, on or about February 6, 2025, another leachate release occurred at the Landfill when Defendants' temporary stormwater, sediment, leachate, and bypass controls failed to contain runoff and leachate associated with Defendants' work at the site.

40. Upon information and belief, and based upon publicly available WVDEP reports, Defendants maintained Outfall 007 as an interim or bypass discharge point for the Landfill and its associated water-treatment system. Rather than keeping contaminated stormwater and leachate within adequate containment and treatment controls, Defendants allowed the system to become

overwhelmed during a rain event, causing contaminated water to enter the inlet sump, overtop the engineered weir, and discharge through Outfall 007.

41. Outfall 007 provided a direct discharge pathway from the Landfill treatment system to Coal Hollow, a tributary of the Ohio River, and to connected surface-water, sediment, and other drainage pathways near Plaintiffs' properties. Through those pathways, untreated landfill leachate, including but not limited to PFOA, was discharged into the surrounding environment and migrated, and continued to migrate toward and onto Plaintiffs' neighboring properties. Again, Defendants did not disclose this event to Plaintiffs or warn them in any way.

42. Subsequent sampling testing by the WVDEP confirmed unsafe PFOA levels, evidencing that Defendants' failed controls released PFAS-contaminated landfill-related water beyond the Landfill site.

43. The February 2025 bypass and resulting discharge were caused by, among other acts and omissions, Defendants' failure to design, construct, inspect, and maintain, stormwater, erosion, sediment, leachate, and bypass controls sufficient to prevent PFAS-contaminated water from reaching surface water, sediment, soil, and neighboring residential properties during foreseeable rainfall events.

44. As a direct and proximate result of Defendants' acts and omissions stemming from the February 2025 bypass discharge event, Plaintiffs and the proposed class have suffered and continue to suffer and incur injuries and damages as alleged in this Complaint.

D. Ongoing Migration and Continuous Tortious Conduct

45. In or about November 2025, Plaintiff Goff observed men wearing hazmat suits at or near the Landfill and surrounding site. That observation prompted further investigation and

review of available information, through which Plaintiff Goff discovered the Landfill breach, leachate releases, bypass events, and PFAS-contamination concerns alleged herein.

46. Plaintiffs and the proposed class did not know, and reasonably could not have known, the true extent of the Landfill activities, releases, containment failures, leachate events, PFAS migration, or the full scope of landfill-related risks until those facts began to be revealed through observable activity at the site and subsequent investigation as further described herein.

47. Upon information and belief, additional leachate releases, bypasses, overflows, containment failures, and/or other discharge events may have occurred at the Landfill and surrounding site that were not disclosed to, and of which Plaintiffs and the proposed class were not otherwise made aware. Any such events further released PFAS, PFOA, and other hazardous landfill-related substances into soil, groundwater, surface water, sediment, drainage pathways, dust, and/or air, and thereby contributed to the continuing migration, accumulation, and presence of contamination on, under, and near Plaintiffs' and class members' properties.

48. The PFAS-containing leachate released in February 2024 did not disappear when the leak stopped and is persistent, mobile, and capable of migrating through soil and groundwater. The unrecovered leachate released to the gravel and soil beneath the treatment system continues to contaminate soil, subsurface materials, groundwater, and migration pathways connected to Plaintiffs' properties.

49. The PFOA-containing stormwater and leachate discharged in February 2025 likewise did not cease causing harm when the overtopping ended. The discharged contaminants entered surface waters, sediments, drainage channels, flood-prone areas, and residential corridors, where they continue to deposit, migrate, and expose Plaintiffs and class members through soil, dust, sediment, surface water, groundwater, and/or air migration pathways.

50. Recent testing performed on behalf of Plaintiffs detected PFAS, including compounds associated with the Landfill, in soil and water on and directly affecting the properties of both the named Plaintiffs and proposed class. Those detections establish an actual and ongoing physical invasion and active contamination of each property, and presently require investigation, additional testing, remediation, and exposure-reduction measures. The contamination has also impaired the present use and enjoyment of the properties of both the named Plaintiffs and proposed class and diminished the properties' marketability and value.

51. Plaintiffs and the proposed class have been, and continue to be, injured by Defendants' continuing acts and omissions, including by the (a) failure to remove or contain PFAS-contaminated and other source material, (b) failure to remediate contaminated soils and groundwater, (c) failure to prevent continuing migration, (d) failure to provide adequate warning and information to affected residents, and (e) failure to provide comprehensive property restoration, medical monitoring, and exposure-reduction measures.

52. Upon information and belief, a Public Notice published on or about July 31, 2026 regarding the Landfill confirms that, after the recent release and bypass events alleged herein, Defendants are now seeking authorization to acquire, construct, install, monitor, and maintain final landfill cover, leachate management, surface-water controls, groundwater monitoring, and post-closure site monitoring at the Landfill. These remediation efforts are necessary as PFAS-contaminated leachate and materials continue to migrate, and expose Plaintiffs and class members through soil, dust, sediment, surface water, groundwater, and/or air migration pathways.

53. Because Defendants' releases and failures have created a continuing condition that remains on and under Plaintiffs' properties and continues to migrate and expose Plaintiffs and class members through soil, dust, sediment, surface water, groundwater, and/or air migration pathways,

Plaintiffs' claims are based on continuing tortious conduct and continuing injury, including ongoing contamination, ongoing exposure, ongoing interference with property rights, and ongoing loss of use and enjoyment.

54. Defendants' ongoing permit activity, including landfill cover, leachate management, surface-water controls, groundwater monitoring, and post-closure site monitoring demonstrate that the Landfill continues to require active containment, management, monitoring, and remediation to address continuing migration risks from hazardous landfill-related chemicals.

55. Defendants' acts and omissions as alleged herein and the resulting contamination are continuing, and Plaintiffs and the proposed class have injuries and damages that are ongoing, recurring, and cumulative.

## <u>**CAUSES OF ACTION**</u>

### <u>**COUNT I: NEGLIGENCE**</u>

56. Plaintiffs incorporate by reference each preceding paragraph as if fully set forth herein.

57. Under West Virginia law, Defendants owed Plaintiffs and the proposed class a duty to exercise reasonable care in the ownership, operation, inspection, maintenance, monitoring, repair, leachate management, stormwater management, and remediation of the Landfill and surrounding site so as to avoid foreseeable injury to neighboring persons and property.

58. Defendants breached those duties, among other things, by (a) failing to prevent releases of PFAS- and PFOA-containing landfill leachate, contaminated stormwater, sediment, groundwater, surface water, soil, dust, and other hazardous landfill-related substances; (b) failing to timely warn Plaintiffs and class members; (c) failing to timely investigate and disclose the extent of contamination; (d) failing to abate, contain, and remediate the contamination; and (e) otherwise

by failing to use reasonable care in designing, maintaining, inspecting, repairing, monitoring, and operating the Landfill and surrounding site.

59. Defendants' negligence directly and proximately caused Plaintiffs and the proposed class to suffer damages, including but not limited to property contamination, diminution in property value, loss of use and enjoyment, investigation and testing costs, remediation and abatement costs, annoyance, inconvenience, discomfort, exposure-related burdens, and other damages recoverable under West Virginia law.

**COUNT II: PRIVATE NUISANCE**

60. Plaintiffs incorporate by reference each preceding paragraph as if fully set forth herein.

61. West Virginia recognizes a private nuisance as a substantial and unreasonable interference with the private use and enjoyment of another's land.

62. Defendants' acts and omissions have created, maintained, and permitted a continuing private nuisance by causing or allowing PFAS, PFOA, landfill leachate, contaminated stormwater, sediment, groundwater, surface water, soil, dust, odors, and other landfill-related contaminants to interfere with Plaintiffs' and class members' private property rights.

63. Defendants' releases have caused a present, substantial, and unreasonable interference with the property of each named Plaintiff and the proposed class. The interference consists of the presence of PFAS contamination and other hazardous substances on and directly affecting the property, the need for investigation and testing, and continuing contamination that materially impairs use, marketability, and property value.

64. As a direct and proximate result of Defendants' private nuisance, Plaintiffs and the proposed class are entitled to damages, abatement, injunctive relief, restoration, and all other relief available under West Virginia law.

## COUNT III: TRESPASS

65. Plaintiffs incorporate by reference each preceding paragraph as if fully set forth herein.

66. West Virginia recognizes trespass as an unauthorized entry upon, invasion of, or interference with another's possessory interest in real property.

67. Defendants intentionally, negligently, recklessly, and/or knowingly caused PFAS, PFOA, leachate, contaminated stormwater, sediment, groundwater, surface water, soil, dust, and other hazardous landfill-related substances to enter, migrate, remain upon, and otherwise interfere with Plaintiffs' and class members' real property without permission or legal right.

68. The entry, presence, and continuing migration of those substances constitute a physical invasion and unlawful interference with Plaintiffs' and class members' possessory interests in their properties.

69. As a direct and proximate result of Defendants' trespass, Plaintiffs and the proposed class have suffered damages, including contamination, loss of use and enjoyment, diminution in value, investigation and testing costs, remediation and abatement costs, and other damages recoverable under West Virginia law.

## COUNT IV: NEGLIGENCE PER SE

70. Plaintiffs incorporate by reference each preceding paragraph as if fully set forth herein.

71. Under West Virginia law, violation of a statute, regulation, order, or permit intended to protect a class of persons from a particular type of harm may establish negligence per se or constitute evidence of negligence where the violation proximately causes the injury.

72. Defendants were subject to statutory, permit, and regulatory duties governing solid-waste facilities, NPDES compliance, water-pollution prevention, groundwater protection, leachate management, stormwater management, hazardous-substance control, public reporting, and protection of neighboring persons and property.

73. The duties imposed by those statutes, permits, and regulations were intended to protect Plaintiffs and the proposed class from the type of contamination, exposure, property damage, nuisance, trespass, and loss of use and enjoyment alleged herein.

74. Defendants violated those duties by among other things, (a) allowing releases of landfill leachate, PFAS, PFOA, contaminated stormwater, sediment, groundwater, surface water, soil, dust, and other hazardous landfill-related substances at the Landfill and surrounding site; (b) by failing to maintain adequate containment, treatment, monitoring, stormwater, and leachate controls; and (c) by failing to timely warn, report, disclose, abate, and remediate the conditions alleged herein.

75. Defendants' statutory, permit, and regulatory violations constitute evidence of negligence per se and thereby directly and proximately caused Plaintiffs' and class members' damages.

## <u>COUNT V: FAILURE TO WARN</u>

76. Plaintiffs incorporate by reference each preceding paragraph as if fully set forth herein.

77. West Virginia law recognizes liability for failure to warn, concealment, and nondisclosure where a defendant has superior knowledge of a material risk, a duty to disclose or warn, and the plaintiff is harmed by the failure to disclose or warn.

78. Defendants knew or should have known of the Landfill's true nature, PFAS content, leachate hazards, release events, containment failures, migration pathways, and threat to nearby residential properties.

79. Defendants had a duty to exercise reasonable care to disclose and warn Plaintiffs and the proposed class of known or reasonably known risks of landfill-related contamination, exposure, migration, and property impacts, particularly where Defendants possessed superior knowledge and controlled the relevant information, monitoring, testing, containment, and reporting systems.

80. Defendants failed to timely and adequately disclose, warn, or inform Plaintiffs and the proposed class of those facts and, upon information and belief, used terminology such as natural trails, nature area, or nature preserve that concealed, minimized, or failed to disclose the true nature, scale, and risk of the Landfill and its ongoing contamination hazards.

81. Plaintiffs and class members reasonably lacked knowledge of the true extent of the Landfill activities, release events, PFAS contamination, and continuing migration risks, and Defendants' failure to warn, concealment, and nondisclosure directly and proximately caused Plaintiffs' and class members' damages.

## COUNT VI: MEDICAL MONITORING

82. Plaintiffs incorporate by reference each preceding paragraph as if fully set forth herein.

83. West Virginia recognizes a cause of action for recovery of medical monitoring costs where such expenses are necessary and reasonably certain to be incurred as a proximate result of tortious exposure to hazardous substances.

84. As a proximate result of Defendants' tortious releases and migration of PFAS, PFOA, and other chemicals, each named Plaintiff and the proposed class has been significantly exposed relative to the general population, as shown by the location and duration of the residences of the Plaintiffs and proposed class, the detected concentrations in the relevant property or exposure pathway, and the completed testing identifying PFAS associated with the Landfill. That exposure has increased each named Plaintiff and the proposed class's risk of serious latent disease and makes periodic diagnostic examinations different from those ordinarily prescribed in the absence of the exposure reasonably necessary.

85. PFAS and PFOA are proven hazardous substances, and Plaintiffs' exposure has increased their risk of contracting serious latent diseases and exposure-related conditions relative to the risk that would exist in the absence of Defendants' conduct.

86. The increased risk makes it reasonably necessary for Plaintiffs and class members to undergo periodic diagnostic medical examinations, biomonitoring, and exposure-related health surveillance different from what would be prescribed in the absence of the PFAS and PFOA exposure alleged herein.

87. Monitoring procedures exist that make early detection, diagnosis, and management of PFAS- and PFOA-related disease and health conditions possible, and Plaintiffs seek an award establishing and funding a court-supervised medical monitoring program for Plaintiffs and the proposed class.

**<u>COUNT VII: STRICT LIABILITY FOR ABNORMALLY DANGEROUS ACTIVITY</u>**

88. Plaintiffs incorporate by reference each preceding paragraph as if fully set forth herein.

89. West Virginia law adopts the doctrine of strict liability for abnormally dangerous activity as articulated in the Restatement (Second) of Torts. *Crum v. Equity Inns, Inc.*, 224 W. Va. 246, 257, 685 S.E.2d 219, 230 (2009). Under Restatement (Second) of Torts § 519, one who carries on an abnormally dangerous activity is subject to liability for resulting harm to the person, land, or chattels of another even though the actor exercised the utmost care to prevent the harm; that strict liability is limited to the kind of harm whose possibility makes the activity abnormally dangerous.

90. Defendants engaged in abnormally dangerous activity by accumulating, storing, containing, treating, managing, and disposing of substantial quantities of persistent PFAS- and PFOA-bearing industrial waste, manufacturing residues, landfill leachate, contaminated stormwater, and related hazardous substances at the Landfill and surrounding site immediately adjacent to residential properties and connected soil, groundwater, surface-water, sediment, dust, and air migration pathways.

91. The foregoing activity created a high degree of risk of serious and enduring harm to neighboring persons and property; was not a matter of common usage; was inappropriate to the location because of its proximity to homes and connected migration pathways; and involved dangerous attributes that outweighed its value to the community. Moreover, even with the exercise of reasonable care, the concentration, containment, treatment, and management of persistent PFAS-bearing wastes and leachate at this location created a residual risk of escape, migration, accumulation, and long-term contamination that could not be eliminated entirely.

92. The release, discharge, escape, migration, and continuing presence of PFAS, PFOA, landfill leachate, contaminated stormwater, sediment, groundwater, surface water, soil, dust, and other hazardous landfill-related substances on, under, and near Plaintiffs' and class members' properties constitute the precise kind of harm arising from the abnormal risks associated with Defendants' activities.

93. The abnormally dangerous activity directly and proximately caused the physical entry and continuing presence of PFAS and PFOA on or beneath each named Plaintiff's property. That physical contamination is the same kind of harm whose possibility makes the activity abnormally dangerous and has caused present investigation and testing expenses, remediation needs, substantial interference with use and enjoyment, and impairment of marketability and value.

## REQUEST FOR INJUNCTIVE AND EQUITABLE RELIEF

94. Plaintiffs incorporate by reference each preceding paragraph as if fully set forth herein.

95. West Virginia courts sitting in equity may abate continuing nuisances and trespasses and enter injunctive relief to prevent continuing or threatened injury where legal remedies are inadequate.

96. Defendants' conduct has caused and continues to cause ongoing contamination, nuisance, trespass, exposure risk, and interference with Plaintiffs' and class members' property rights that cannot be fully remedied by money damages alone.

97. Plaintiffs and the proposed class are entitled to equitable and injunctive relief requiring Defendants to investigate, abate, remediate, and prevent continuing contamination and exposure, including but not limited to (a) comprehensive soil, surface-water, groundwater, sediment, dust, and air testing; (b) disclosure of relevant data; (c) establishment and funding of

medical monitoring and exposure-related health surveillance; (d) abatement of continuing nuisance and trespass conditions; (e) remediation and restoration of affected properties; (f) provision of safe alternative water where necessary; and (g) such other relief as the Court deems just and proper.

98. Plaintiffs further seek restoration, abatement, and equitable relief to protect affected properties, prevent continuing and future harm, and require Defendants to remediate conditions for which they are legally responsible.

**REQUEST FOR PUNITIVE DAMAGES**

99. Plaintiffs incorporate by reference each preceding paragraph as if fully set forth herein.

100. West Virginia permits punitive damages upon proof by clear and convincing evidence of actual malice or conscious, reckless, and outrageous indifference to the health, safety, and welfare of others.

101. Defendants' specific conduct as alleged herein was undertaken with actual malice and/or with a conscious, reckless, and outrageous indifference to the health, safety, and welfare of Plaintiffs and the proposed class.

102. Defendants knew or should have known that PFAS, leachate, contaminated stormwater, and landfill-related hazardous substances posed serious risks to neighboring residents and properties, yet (a) failed to prevent releases, (b) failed to timely warn residents, (c) failed to fully disclose the true risks, and (d) failed to promptly and adequately remediate the contamination.

103. Plaintiffs seek punitive damages in an amount sufficient to punish Defendants and deter similar misconduct, subject to proof and all applicable requirements and limitations under West Virginia law.

**PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL ISSUES TRIABLE**

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs Jason Goff and Aimee Cross, individually and on behalf of all others similarly situated, respectfully request that this Court enter judgment in their favor and against Defendants, The Chemours Company FC, LLC, and The Chemours Company, as follows:

(a) certify this action as a class action and appoint Plaintiffs as class representatives and their counsel as class counsel;

(b) award compensatory damages for property damage, diminution in value, loss of use and enjoyment, investigation and testing costs, remediation and abatement costs, medical monitoring costs, annoyance, inconvenience, discomfort, and all other recoverable damages;

(c) establish and fund a court-supervised medical monitoring program for Plaintiffs and the proposed class;

(d) award punitive damages subject to proof and applicable West Virginia law;

(e) enter private injunctive and equitable relief necessary to protect Plaintiffs and the proposed class, including investigation, disclosure, containment, abatement, remediation, restoration, medical monitoring, and other measures necessary to prevent continuing private harm;

(f) award pre-judgment and post-judgment interest, costs, expenses, and attorneys' fees where recoverable; and

(g) grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

**JASON GOFF**, individually and on behalf of all others similarly situated, and
**AIMEE CROSS**, individually and on behalf of all others similarly situated, **by counsel:**

*/s/ Benjamin B. Ware*__________________
R. Booth Goodwin II (WVSB #7165)
Benjamin B. Ware (WVSB #10008)
W. Jeffrey Vollmer (WVSB #10277)
David A. Dobson (WVSB #12092)
GOODWIN & GOODWIN, LLP
300 Summers Street, Suite 1500
Charleston, WV 25301
T: (304) 346-7000
F: (304) 344-9692
rbg@goodwingoodwin.com
bbw@goodwingoodwin.com
wjv@goodwingoodwin.com
dadobson@goodwingoodwin.com

William J. Ihlenfeld (WVSB #7465)
Maximillian F. Nogay (WVSB #13445)
Traci M. Cook (WVSB #7147)
MAVERICK LITIGATION
P.O. Box 613
Morgantown, WV 26507
T: (304) 322-6625
F: (304) 906-2560
wji@maverickwv.com
max@maverickwv.com
tmc@maverickwv.com

*Counsel for Plaintiffs*